IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERIC LEHMON HILTON,

        Petitioner,

   v.

JEFF PREMO,

        Respondent.

Case No. 2:13-cv-00246-YY

FINDINGS AND RECOMMENDATION

Tonia L. Moro
Attorney at Law, P.C.
19 S. Orange Street
Medford, Oregon 97204

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
James M. Aaron, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

YOU, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his underlying state-court convictions. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) should be denied.

## BACKGROUND

In the autumn of 1998, Uta Summerer, acting in her role as a property manager at an apartment complex in Portland, evicted petitioner from his unit. According to Summerer, she had never had such serious disagreements with any of her other tenants in more than thirteen years on the job. Trial Transcript (12/18/2000), p. 42.

Sometime between two and four weeks later, on October 29, 1998, petitioner returned to the apartment complex. His seventeen-year-old girlfriend at the time, Kelly Zollner, was driving. According to Zollner, petitioner was holding a silver and black handgun with a ".380" designation on it. Trial Transcript (12/19/2000), p. 39. As Zollner drove by the complex, petitioner told her to slow down, and he proceeded to fire the gun at the apartment complex. *Id* at 38.

Summerer was inside her apartment at the time and heard loud noises, as if there had been an explosion against the wall of her apartment. Trial Transcript (12/18/2000), p. 39. Police arrived at the complex shortly thereafter, and Summerer saw that "there were these bullet holes all along the side of my apartment." *Id* at 40. One of the bullets had traveled through her wall as well as the couch on which she was sitting, and came to rest on her

floor.  *Id* at 41.   The investigating officer found several .380 casings at the scene and nine bullet holes in the south side of the apartment complex.   Trial Transcript (12/19/2000), p. 24. Summerer told the police that she believed petitioner was responsible for the shooting.   Trial Transcript (12/18/2000), p. 42.

In December 1998, Zollner accused petitioner of raping her. In June of the following year, she showed petitioner's parole officer, Greg Collard, the apartment complex where the shooting had occurred.   Respondent's Exhibit 129; Trial Transcript (12/19/2016), pp. 12-13.

In addition to these criminal accusations, in August 1998, JG, a 17-year-old female, accused petitioner of rape. Respondent's Exhibit 127.   In October 1998, EK, a 15-year-old female, also accused petitioner of rape.   Respondent's Exhibit 140.   Based on the totality of these allegations, the Multnomah County Grand Jury indicted petitioner on three counts of Rape in the First Degree, Contributing to the Sexual Delinquency of a Minor, Rape in the Third Degree, Felon in Possession of a Weapon, and Unlawful Use of a Weapon with a Firearm.   Respondent's Exhibit 102.

For her part in the drive-by shooting, Zollner pleaded no contest to Attempted Unlawful Use of a Weapon.   Respondent's Exhibit 134.   As for petitioner, he ultimately pleaded no-contest to one count of Rape in the First Degree pertaining to JG as well as one count of Rape in the Third Degree pertaining to EK.   In

exchange, the State agreed to drop the remaining charges of rape and Contributing to the Sexual Delinquency of a Minor charges.

Petitioner proceeded to a jury trial on the charges of Felon in Possession of a Weapon and Unlawful Use of a Weapon with a Firearm. The State primarily constructed its case around Zollner's testimony. However, because Zollner was an accomplice in the shooting incident at the apartment complex, the State recognized that it could not obtain a conviction in petitioner's case without independently corroborating Zollner's testimony. Trial Transcript (12/18/2000), p. 51; ORS 136.440(1) (co-conspirator testimony must be independently corroborated). The State sought to do so through JG, who was prepared to testify that she had seen petitioner with a gun similar to that described by Zollner, and had last seen him with the gun thirteen days prior to the shooting. Trial Transcript (12/18/2000), p. 53. The State also sought to corroborate Zollner's testimony via AH, a friend of petitioner's who was allegedly prepared to testify that in the winter of 1998, petitioner told her that he had a firearm.

Defense counsel filed a motion in limine to exclude this evidence, arguing that it amounted to propensity evidence:

> My objection to that type of testimony is
> that what they are attempting to accomplish,
> what the state is attempting to accomplish
> there is simply to say that an act occurred;
> that is that Mr. Hilton had said he had a
> firearm previously or had displayed a firearm
> previously to one person or another; and that
> that means that he's more likely to have a
> propensity to be acting in accordance with

> that previous action on [the] present
> occasion, October 29, 1998.

*Id* at 50.

The trial court agreed to give a limiting instruction, but denied defense counsel's motion to exclude the testimony. *Id* at 58-59. At defense counsel's request, the court first took the statements of the two corroborating witnesses outside the presence of the jury in an offer of proof. AH did not recall that petitioner informed her he had a gun; she only remembered that petitioner mentioned a gun, but was unable to remember the context or even if it had occurred in 1997 or 1998. *Id* at 95-96. As a result, the trial court excluded this testimony. *Id* at 99.

JG was prepared to testify that she saw petitioner with a gun three times in October 1998. The first time, she was a passenger in a car petitioner was driving at excessive speeds. When she told him to slow down, he poked her in the ribs with a black and chrome handgun. *Id* at 65-66. Another time, she was taking a shower at her mother's house when petitioner threatened to kill her and "was poking the shower curtain with the gun. . . ." *Id* at 66. The final time JG saw petitioner with his gun "was on the couch." *Id*. JG said that she was sure about the dates because petitioner raped her in October, and she had no contact with him after that. *Id* at 68. The trial court concluded that JG's testimony was consistent with that of Zollner and therefore admissible, but instructed the prosecutor that he

must refrain from eliciting answers involving both the rape and petitioner's threat to kill JG. *Id* at 81-82.

The prosecutor also made an offer of proof with respect to Zollner who was prepared to testify that petitioner's gun was silver and black, and "had a thing that you pop up into it with six bullets, and it had one in the chamber." *Id* at 86, 89.

These witnesses appeared in front of the jury and testified consistently with the State's offer of proof. Thereafter, defense counsel moved for a judgment of acquittal on several bases, including that the State's evidence corroborating Zollner's testimony was insufficient. Trial Transcript (12/19/2000), p. 92. The trial court denied the motion on all bases. *Id* at 94.

Defense counsel elicited testimony from Zollner on cross-examination that she had met with the prosecutor 10 times before trial. *Id* at 58. Defense counsel also demonstrated that Zollner received a plea deal from the State that included a probationary sentence and no jail. *Id* at 64-66. Because the implication was that Zollner crafted testimony acceptable to the prosecutor over the course of many meetings, the prosecutor sought to address the issue during closing argument. He alluded to a taped statement Zollner gave police before ever meeting with the prosecution. Although petitioner's parole officer, Gregory Collard, had briefly referred to that taped statement in passing during the

trial,[1] it was never admitted into evidence.  The prosecutor informed the jury, "Keep in mind, Ms. Zollner gave a complete statement on tape to the police before [the prosecutor] ever got involved.  So what was her motive to lie at that time, folks?"  *Id* at 122.

Defense counsel responded to this during his closing argument:

> **Defense**: The state said something interesting, something about, I don't know if you heard this or not, something about an audiotape of Kelly Zollner giving a statement that was supposed to save the day for the state and make the timing right.
>
> Remember, again the state has got that incredible burden to prove their case beyond a reasonable doubt.  What tape?  If he had a tape, if there was really a tape, why would[n't] he bring a tape in here, put a tag on it?
>
> **D.A.**: Your Honor, I'd like to reopen my case and move to admit the tape.  He's making an issue.
>
> **Court**: No.  No.  It is argument.  It came up.  You can respond to it.  Please be seated.

*Id* at 143-44.  Defense counsel also argued that Zollner had repeatedly met with the prosecutor, and suggested that these meetings might have swayed her testimony:

> You saw a little bit of how suggestions can change memories, particularly for someone like Kelly Zollner.  You saw the long-term effects of what these 10 conversations with the [prosecutor] and these, I think it was

---

[1]  The prosecutor asked Collard, "Were you present then when Ms. Zollner gave a taped statement to Detective Higgins?"  Trial Transcript (12/19/2000), p. 15.  Collard simply replied in the affirmative.  *Id.*

two or three conversations with [petitioner's
parole officer] can produce when you are told
what the facts are supposed to be.

He'll tell you, you are supposed to start to
make them into it.  She still didn't get all
of the way there.   I don't know what they
were talking about for those 10 sessions.

*Id* at 137.

This prompted the prosecutor to respond as follows during

rebuttal:

[Defense counsel is] very critical of me.
He's very critical, you know, with these
subtle accusations.

District attorney has 10 conversations with
Kelly Zollner.  If any of you believe that a
deputy district attorney would get with the
witness and try to fabricate the testimony,
which [defense counsel] implied, you are not
aware of the Oregon State Bar, I'd end up in
jail, and I have no intention of going there.

It is ridiculous to make those accusations of
any member of the bar.  Why would a person do
that?  I think that he has to do that because
his original opening statement to you has
completely fallen apart.  Kelly Zollner went
to the parole officer.  Kelly Zollner was
jealous.

* * * * *

Fortunately in this case, we have two lawyers
on the jury.  The importance there is that
this other argument they made, where is the
tape?  Now, lawyers know what hearsay is.

Okay.  And she's on tape giving a statement
back in June of 1999.  If you don't think,
first of all, do you think we can just keep
that tape and not give it to anybody?   In
criminal justice, that's ridiculous.   Do you
think they don't have a copy of it?

8 – FINDINGS AND RECOMMENDATION

> And do you think if Kelly Zollner had said
> one thing inconsistent during this entire
> time from the very beginning, that they
> wouldn't have had that tape out playing her
> inconsistent statements for you?
>
> To say that somehow I am hiding that tape or
> didn't put that tape into evidence when
> [defense counsel] knows that it would never
> have been admitted, it is ridiculous. It is
> frustrating. I'm glad two lawyers are on
> this panel because I think it goes to show
> you the ridiculous nature of his argument.

*Id* at 151-153.

The jury convicted petitioner of both offenses by 10-2 votes on each count. As a result, the trial judge sentenced him to consecutive sentences totaling 15 years in prison. Sentencing Transcript, pp. 27-30.

Petitioner took an initial direct appeal which the Oregon Court of Appeals dismissed. Respondent's Exhibit 103. Petitioner then filed a second direct appeal, and the Oregon Court of Appeals issued a written opinion wherein it granted relief as to a portion of his sentence, remanded the case for resentencing, but otherwise affirmed the trial court's decision. *State v. Hilton*, 187 Or. App. 666 (2003), 69. P.3d 779 (2003). Petitioner sought review of that decision, but the Oregon Supreme Court denied review. 336 Or. 377, 84 P.3d 1081 (2004).

Following his resentencing, petitioner filed a third direct appeal which prompted the Oregon Court of Appeals to again vacate his sentence in the wake of *Blakely v. Washington*, 542 U.S. 296 (2004). *State v. Hilton*, 205 Or. App. 669, 135 P.3d 358 (2006).

The Oregon Supreme Court again denied review. 341 Or. 198, 140 P.3d 581 (2006).

Following his second resentencing, petitioner filed a fourth direct appeal. The Oregon Court of Appeals affirmed the underlying decision without opinion, and the Oregon Supreme Court denied review. *State v. Hilton*, 222 Or. App. 331, 194 P.3d 193 (2008), *rev. denied*, 345 Or. 618, 201 P.3d 909 (2009).

Petitioner next filed for post-conviction relief ("PCR") in Marion County where the PCR court denied relief. Respondent's Exhibit 122. He then filed a second PCR action which the PCR court summarily dismissed. Respondent's Exhibit 123. Petitioner filed a Second Amended PCR Petition in a third collateral challenge on November 12, 2009, and the PCR court denied relief on all of his 70+ claims. Respondent's Exhibit 165. The Oregon Court of Appeals affirmed that decision without a written opinion, and the Oregon Supreme Court denied review. *Hilton v. Premo*, 251 Or. App. 754, 288 P.3d 277, *rev. denied*, 353 Or. 127, 295 P.3d 640 (2012).

Petitioner filed this federal habeas corpus case on February 11, 2013, raising forty grounds for relief. On March 4, 2013, the court appointed counsel to represent him. Respondent asks the court to deny relief on the Petition because: (1) petitioner has not met his burden of proof with respect to his 38 unargued grounds for relief; (2) petitioner has procedurally defaulted

most of his claims; and (3) Oregon's state courts properly denied relief on petitioner's argued claims.

## FINDINGS

### I.   Unargued Claims

Petitioner raises a total of 40 grounds for relief in his Petition.   Of those 40 grounds, he elects to provide the court with briefing only as to whether he was the victim of ineffective assistance of counsel when: (1) his trial attorney failed to object or move for a mistrial in response to the prosecutor's improper and prejudicial remarks during closing argument; and (2) his direct appellate attorney failed to assign error to the trial court's determination that the State presented sufficient evidence to corroborate Zollner's testimony.   These claims appear to correspond to Grounds Three and 22 of the Petition, respectively.

Petitioner does not argue the merits of his remaining claims and therefore fails to carry his burden of proof with respect to these unargued claims.   *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims).   Even if petitioner had provided the court with briefing on his 38 remaining claims, the court has examined them based upon the existing record and determined that they do not entitle him to habeas corpus relief.

///

///

11 – FINDINGS AND RECOMMENDATION

II.   **The Merits**

    A.   **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).   A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413.   The "unreasonable application"

clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id*.

**B.   Analysis**

**1.   Ineffective Assistance of Appellate Counsel**

As previously noted, accomplice testimony in Oregon is insufficient to result in the conviction of a co-conspirator absent corroboration "by other evidence that tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances of the commission." ORS 136.440(1). Petitioner alleges that the trial judge erred when he determined that the State had offered sufficient corroborating evidence of Zollner's testimony, and he faults his direct appellate attorney for not raising this claim of trial court error.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First,

petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689. An appellate attorney "who files a merits brief need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Accordingly, a petitioner wishing to bring a *Strickland* claim based on his appellate attorney's failure to raise a particular claim must not only show that the claim had merit, but must also demonstrate that the omitted claim was "clearly stronger than issues that counsel did present." *Id*.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. In proving prejudice with respect to the performance of appellate counsel, a petitioner must demonstrate a reasonable probability that but for appellate counsel's failure, "he would

have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285-286 (2000). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

The judge presiding over petitioner's trial felt that the State's evidence was sufficient to corroborate Zollner's testimony as indicated by his denial of petitioner's motion for judgment of acquittal. Trial Transcript (12/19/2000), p. 94. Appellate counsel submitted an affidavit to the PCR court wherein he stated that he did not assign error to the trial court's resolution of the issue because he, too, believed the State's evidence corroborating Zollner's testimony was sufficient. Respondent's Exhibit 159, pp. 1-2. Petitioner and the State argued this issue in the PCR court based solely upon the application of state law. Respondent's Exhibit 125, pp. 26-28, 40-41; Respondent's Exhibit 143, pp. 33-36.

The PCR court denied relief in petitioner's case largely by adopting the State's arguments from its PCR Trial Memorandum: "I agree with defendant's arguments set forth at pages 5 through 31 of its trial memorandum." Respondent's Exhibit 163, p. 1. The portions of the Trial Memorandum it adopted did not cover petitioner's claims of ineffective assistance of appellate counsel, but did encompass the State's argument that "[t]he evidence submitted by the state aside from the testimony of Kelly

Zollner sufficiently corroborated her testimony. . . ."
Respondent's Exhibit 146, p. 13. As a result, the PCR court
specifically concluded that "[a]ppellate counsel was not
inadequate for failing to assign error to the trial court's
denial of the Motion for Judgment of Acquittal for lack of
corroboration evidence." Respondent's Exhibit 163; Respondent's
Exhibit 164, p. 4. Petitioner presented this issue to the
Oregon Court of Appeals which affirmed the PCR court's decision.
Respondent's Exhibit 170.

Where the trial court, PCR court, and the Oregon Court of
Appeals all found that the corroboration of Zollner's testimony
was sufficient to satisfy ORS 136.440(1), it is not the province
of a federal habeas court to revisit the issue. *Estelle v.
McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is
not the province of a federal habeas court to reexamine state-
court determinations on state-law questions."); *Bains v. Cambra*,
204 F.3d 964, 972 (9th Cir.) ("a federal court is bound by the
state court's interpretations of state law."), *cert. denied*, 531
U.S. 1037 (2000). Accepting these consistent state court
interpretations of state law on the corroboration issue,
appellate counsel's performance did not fall below an objective
standard of reasonableness when he did not assign error to the
trial court's ruling on corroboration. Accordingly, the PCR
court's decision denying relief on petitioner's ineffective

assistance of appellate counsel is neither contrary to, nor an unreasonable application of, clearly established law.

### 2.    **Ineffective Assistance of Trial Counsel**

Petitioner also claims that his trial attorney was ineffective when he failed to object to, or move for a mistrial in response to, the prosecutor's allegedly improper and prejudicial remarks during closing arguments. He asserts that where the prosecutor referred to Zollner's taped statement that was not in evidence, vouched for his own credibility in response to the defense's assertion that the State failed to introduce the tape, and twice asked the jury to consult the two lawyers on the jury to explain evidentiary rules, counsel was under a duty to object.

In its Findings of Fact and Conclusions of Law, the PCR court stated that "[t]rial counsel was not inadequate for failing to move to strike various statements made by the deputy district attorney during closing arguments, or to move for a mistrial based on statements made by the deputy district attorney during closing arguments." Respondent's Exhibit 164, p. 3.  The PCR court reasoned that the prosecutor's comments would not meet the "very high threshold" to warrant a mistrial, particularly where the trial court invited the prosecutor's rebuttal comments. Respondent's Exhibit 143, p. 20 (adopted by Respondent's Exhibit 163, p. 1).

Respondent once again asserts that this issue is one concerning only an interpretation of state law. However, the integrity of closing argument is not simply a state law issue. Improper vouching during closing argument may offend the U.S. Constitution where a prosecutor gives personal assurances of a witness' veracity or suggests that information not in the record supports that witness' testimony. *United States v. Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir. 2005); *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993).

Petitioner argues that the PCR court's decision constituted an unreasonable application of clearly established federal law, especially in light of the fact that the jury convicted him of both counts by the narrow margin of 10-2. He claims that even if he had not succeeded in obtaining a mistrial, he might have obtained a limiting instruction and preserved the issue of the prosecutor's improper comments for appeal.

The prosecutor's initial mention of the 1999 taped statement by Zollner was improper where it had not been admitted into evidence. However, the prosecutor's remark was so brief that defense counsel was not even sure the jurors had taken any notice of it. Trial Transcript (12/19/2000), pp. 143-44. It was similar to the fleeting testimony by petitioner's parole officer regarding Zollner's taped statement; the parole officer simply stated that he was present when Zollner gave a taped statement, but provided no details regarding the contents of the tape. *Id*

at 8. Given the circumstances, a motion to strike may have only served to highlight the issue. Moreover, while defense counsel could have moved for a mistrial, such a motion was unlikely to succeed because the prosecutor's brief mention of the tape did not infect the entire proceedings with so much prejudice that a fair trial could not be achieved. *See State v. Evans,* 211 Or. App. 162, 168, 154 P.3d 166 (2007) ("[I]t is within the trial court's discretion to decline to declare a mistrial in the wake of a potentially prejudicial incident, if the court finds that the incident was sufficiently inadvertent and isolated so as to not compromise a fair trial.").

Not only would a motion for mistrial have been unsuccessful, but defense counsel would have run at least some risk in making such a motion. Trial judges have "wide discretion" in granting or denying a motion for mistrial, which extends to giving a curative instruction in lieu of granting the motion. *State v. Grenawalt*, 86 Or. App. 96, 98, 738 P.2d 232, 233 (1987). Here, the trial judge could have denied the motion for mistrial but given the jury a curative instruction that would have alerted the jurors to the fact that: (1) the tape actually did exist; and (2) neither party sought to admit it. Such a scenario would not have benefitted the defense because the jury, which included two attorneys, might have concluded that because the tape was not admitted, it contained a prior out-of-court statement by Zollner that was consistent with her testimony.

In lieu of objecting and moving for a mistrial, defense counsel attempted to plant doubt in the jury's mind by suggesting that there must be a reason why the State never sought to introduce the tape. This was a shrewd tactic, as defense counsel offered this suggestion at a time when the State could not offer the tape as rebuttal evidence[2] and would have already known through discovery that the statement was not helpful to his client. Where the State's initial mention of the tape was unlikely to warrant a mistrial in this case, this was a reasonable strategic decision.

Defense counsel also could not have moved for mistrial during the State's rebuttal. Once defense counsel suggested the tape did not exist, he was no longer in a position to move for a mistrial based upon the State's accurate response that it did exist. Similarly, where defense counsel attempted to cast doubt on the integrity of the tactics utilized by the prosecutor, it was not improper for the prosecutor to defend himself. Although petitioner takes issue with the prosecutor's statements advising the jury that its two attorney members were familiar with principle of hearsay, this fleeting remark was in no way prejudicial to the trial. *See State v. Barone*, 328 Or. 68, 83, 969 P.2d 1013, 1024 (1998)(trial court did not abuse its discretion in denying motion for mistrial where prosecutor's

---

[2] Indeed, when the prosecutor sought to introduce the taped statement in the wake of defense counsel's suggestion that it did not exist, the trial judge

objectionable action was "isolated and fleeting"). For all of these reasons, the PCR court's decision denying relief on this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

## RECOMMENDATION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) should be denied, and a judgment should be entered dismissing this case with prejudice. The court should decline to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due within 17 days. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 11th day of October, 2016.


_/s/Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge

---

flatly refused because the time for presenting evidence had passed. Trial Transcript (12/19/2000), p. 144.